# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| AFRAM BOUTROS f/k/a<br>AFRAM KHANANISHO | )<br>)<br>) | |
| Plaintiff, | )<br>) | No. 10 C 8196 |
| v. | )<br>)<br>) | Judge John J. Tharp, Jr. |
| AVIS RENT A CAR SYSTEM, LLC<br>d/b/a AVIS | )<br>)<br>) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Afram Boutros alleges that his former employer, defendant Avis Rent A Car System, LLC ("Avis"), discriminated against him and subjected him to a hostile work environment on the basis of his race in violation of Title VII, and unlawfully retaliated against him for exercising his rights under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). Avis moved for summary judgment on all counts of Boutros's complaint, and after Boutros opposed the motion, Avis also moved to strike portions of the materials Boutros submitted in response. The Court grants Avis's motion to strike in part, and will not consider several portions of Boutros's filings in opposition, as explained below. However, Boutros nonetheless marshals sufficient admissible evidence to survive summary judgment on each of his claims. Therefore, Avis's motion for summary judgment is denied.

## BACKGROUND

In deciding a motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). Therefore,

for the purposes of this opinion, the Court will resolve all disputed fact issues in favor of Boutros.

Boutros began working for Avis in 2002, and at all relevant times during his employment he worked as a courtesy bus driver responsible for transporting passengers between the O'Hare Airport and Avis's O'Hare Airport facility. Avis's Facts (Dkt. 79) ¶¶ 9, 14. In 2005, Boutros informed Avis that he would be leaving his employment (Avis characterizes it as a resignation; Boutros says it was a leave of absence) to join the U.S. Army. The parties dispute whether Boutros provided Avis with proper advance notice of his intent to join the military, as required by USERRA (*see* 38 U.S.C. § 4312(a)(1)). In 2006, after his military service ended, Boutros attempted to return to his position at Avis pursuant to his rights under USERRA, but Avis refused to rehire him at that time on the ground that he had provided insufficient notice before leaving Avis and was therefore not protected by USERRA. Boutros sued to recover his job, and Avis resolved the lawsuit by making an offer of judgment, giving Boutros his job back. Avis's Facts (Dkt. 79) ¶ 16. On or about May 4, 2007, Boutros returned to his position as courtesy bus driver at Avis. *Id.* ¶ 17.

Boutros's problems at Avis began almost immediately after his return. He suffered a litany of what could be described, individually, as minor inconveniences. First, though Boutros elected to have Avis withdraw his union dues directly from his paycheck, the union never received dues for him at any point after he returned to Avis. Boutros's Facts (Dkt. 88-3) ¶ 1; PX 3. Boutros also had trouble with his insurance—although he elected to enroll in insurance programs sponsored by Avis and premiums were deducted from his paycheck, for the first three months of his re-employment with Avis he was unable to use his insurance coverage and did not receive an insurance information packet. *Id.* ¶ 2; PX 17. Avis also routinely failed to timely

transmit Boutros's paychecks, requiring him to repeatedly complain that he was not being paid and to go to extra efforts to obtain his paychecks. *Id.* ¶¶ 9-10; PX 11, PX 14, Boutros Dep. at 134-36; 157-60. And Boutros's Avis ID card to swipe in and out of Avis's payroll system never worked despite his numerous complaints. Boutros's Facts (Dkt. 88-3) ¶ 8; PX 11; Boutros Dep. at 208-11.

More ominous, Boutros has produced evidence that Avis began looking for a way to terminate his employment less than a month after his return. PX 16. On May 23, 2007, Carol Neu, a manager at Avis, emailed several other Avis managers about Boutros's trouble accessing his health insurance benefits, stating that he had "quite the game going," and implying that Boutros was feigning illness. *Id.* Bill Rogers, Avis's City Manager, forwarded this email to Eva Liss, Avis's Human Resources Manager, and claimed that Boutros was "talking about the settlement;" apparently a reference to the settlement of Boutros's USERRA claim that resulted in his return to Avis. *Id.* Rogers told Liss that most settlements contain provisions stating that discussing the settlement terms could result in termination, and he asked Liss to check whether Boutros's settlement provided grounds to terminate him. *Id.* Boutros was not, however, terminated at that time.

Later in 2007, Avis stripped Boutros of his seniority, causing him to have to work irregular and less desirable shifts. Boutros's Facts (Dkt. 88-3) ¶ 3; Boutros Dep. at 78-80; 111-15. Avis points out that it originally returned Boutros to his position with the same seniority he had achieved when he left to serve in the military, Boutros Dep. at 119, and it disputes that Boutros ever lost his seniority. But for the purposes of summary judgment factual disputes are to be resolved in the non-movant's favor, so the Court will assume that Avis did remove his seniority.

Boutros also endured racial and religious harassment after his return to Avis. According to Boutros, shift manager Rolando Trujillo repeatedly harassed him about his perceived race and religion. Boutros alleges that Trujillo asked him where he was from, and after Boutros informed him that he was from Lebanon, Trujillo began making comments about Boutros being an Arab. Boutros Dep. at 416-17. In particular, Boutros alleges that Trujillo asked him whether his father and brothers were on the planes that crashed into the Twin Towers on September 11, 2001. *Id.* at 417. Boutros also alleges that from that time forward, Trujillo instructed him not to take his lunch or smoking breaks with the white or African American employees near the customer service building, but rather required him to take his breaks at the administration building where most of the Muslim employees congregated. *Id.* at 419-23. Though Boutros is a Christian and is ethnically Assyrian, Trujillo apparently misidentified him as a Muslim and Arab. *Id.* at 9-10; 28. Boutros admitted that Muslim employees would sometimes eat or smoke near the customer service building with the other employees, and the other employees would sometimes choose to eat or smoke near the administration building with the Muslims. *Id.* at 428-32. He also admitted that he personally would sometimes freely choose to smoke at the administration building, but he nonetheless objected to being prohibited from eating or smoking elsewhere. *Id.* at 426-32. He admits that he did not complain about this treatment to anyone at Avis. *Id.* at 429-30.

Boutros further alleges that Trujillo physically battered him. On January 4, 2008, Trujillo ran up behind him, pushed him in the back, and then grabbed and hugged him. *Id.* at 351-53. Boutros alleges (but Avis disputes) that he suffered back and kidney injuries from this altercation. *Id.* at 354-57. Avis admits that the "hugging" incident took place, but claims that Trujillo simply "noticed that [Boutros] was having a difficult day, so he approached [him] from the side and gave him a hug." Avis's Facts (Dkt. 79) ¶ 21. The parties agree that the "hug" lasted

4

only for a few seconds. Afram reported the incident to local management, and also called an Avis hotline to complain about the alleged battery. PX 25. Upon learning that Boutros had called the hotline, Liss emailed her fellow Avis managers describing his hotline call as "unbelievable" and reminding her fellow managers that "he is the one that sued us for the military leave issue recently." *Id.* Rogers responded to Liss's email, accusing Boutros of "fraud, dishonesty, defamation of character," and saying that "Afram needs to be held accountable once and for all." *Id.*

Avis suspended Boutros without pay, and eventually terminated his employment, for an incident that occurred on May 27, 2008. As Boutros made a right turn in his empty courtesy bus, the fire extinguisher in the bus dislodged from its holder, fell, and sprayed residue inside the bus. Boutros Resp. to Avis's Facts (Dkt. 88-2) ¶ 26. Boutros attempted to report the issue to shift manager Mario Foster, but Foster was dealing with a customer. *Id.* Boutros then reported the problem to Trujillo, who boarded the bus and observed the fire extinguisher residue. *Id.* ¶ 28. Trujillo instructed Boutros not to inhale or touch the residue, and Boutros was not having any trouble breathing at that time. *Id.* ¶ 29. One of the managers (the parties dispute which one) then told Boutros to take the bus to the maintenance shop for cleaning, which he did. *Id.* Boutros claims that no one from maintenance was available to clean the bus, so he radioed Trujillo to ask whether he should clean the bus himself. *Id.* Trujillo answered in the affirmative, and Boutros cleaned the bus. *Id.*

Later that evening, Foster asked Boutros whether he needed medical attention as a result of inhaling the fire extinguisher residue, but Boutros declined. *Id.* ¶ 33. The next day, May 28, 2008, however, Boutros complained to Foster that he was suffering shortness of breath, and that he had coughed up blood and vomited from the residue, and he requested medical attention. *Id.* ¶

35. Despite these complaints, Foster observed Boutros smoking a cigarette. *Id.* Boutros was transported to a medical clinic and then on to a hospital to receive treatment. *Id.* ¶¶ 36-39.

On the morning of May 29, 2008, Rogers sent an email to other Avis managers regarding Boutros's supposed injuries, stating "AGAIN, THIS IS FRAUDULENT! LET ME KNOW IF WE CAN RID OURSELVES OF HIM ONCE AND FOR ALL!" PX 49. On June 2, 2008, several Avis managers met with Boutros to discuss the fire extinguisher incident. *Id.* ¶ 42. They determined that Boutros's version of events was inconsistent with what they had learned from Foster and Trujillo. *Id.* On June 8, 2008, Avis suspended Boutros without pay pending further investigation. *Id.* ¶ 43. In its subsequent investigation, Avis claims that it uncovered several additional discrepancies between Boutros's statements and the available evidence. *Id.* ¶ 44. On June 26, 2008, Rogers met with Boutros to discuss the incident. *Id.* ¶ 45. Boutros claims that at that meeting Rogers told him that he did not believe his story, and did not trust him, and that "Arab[s] are all fraudulent, and you are also fraudulent." Boutros Dep. at 322-23; Boutros's Facts (Dkt. 88-3) ¶ 29. Boutros was terminated effective September 30, 2008, having never returned to work following his suspension. Boutros Resp. to Avis's Facts (Dkt. 88-2) ¶ 47.

## DISCUSSION

**MOTION TO STRIKE**

Avis moves to strike several portions of Boutros's affidavit, as well as portions of his Rule 56.1 statement of facts and his responses to Avis's statement of facts. Several of Avis's arguments have merit; the Court strikes paragraphs 6, 23, 30,[1] 89, 90 and portions of paragraphs 32 and 86 of Boutros's affidavit; paragraphs 6, 22, 30, and portions of paragraph 15 of his Rule

---

[1] In its motion to strike, Avis misidentified paragraph 30 of Boutros's affidavit as paragraph 6. Dkt. 94 at 3.

56.1 statement, and portions of paragraphs 22, 23 and 41, of his Rule 56.1 responses. However, Avis's motion to strike is denied in all other respects. The Court will briefly explain its reasons for denying those portions of Avis's motion to strike that relate to evidence that the Court relies on to decide summary judgment.

Avis moved to strike paragraphs 38-41 of Boutros's affidavit and paragraphs 60-61 of his Rule 56.1 responses on the ground that those paragraphs—which relate to Boutros's assertion that Trujillo told him to eat and smoke with the Muslims—are contrary to Boutros's deposition testimony. That is simply not true; at his deposition, Boutros testified at length about occasions when Trujillo ordered him to smoke and eat at the administrative building with the Muslim employees. *See, e.g.,* Boutros Dep. at 419-34. Avis also moved to strike paragraph 59 of the Rule 56.1 responses, which relates to Boutros's allegation that Trujillo insinuated that his family was involved in the September 11, 2001 attacks, but again Boutros's deposition testimony is consistent with his response. *Id.* at 416-17. Finally, Avis moved to strike paragraphs 13, 18, and 53 of Boutros's Rule 56.1 responses, relating to Boutros's loss of seniority and work schedule. But Avis failed to make any specific argument why those paragraphs should be stricken, and the motion is therefore denied with respect to those paragraphs.

As to other portions of Boutros's documents that Avis has moved to strike, Avis's motion is denied, but the Court in any event need not rely on those portions in deciding summary judgment. Therefore, Avis's motion to strike is granted in part and denied in part. The Court has not considered the stricken portions of the materials in deciding Avis's motion for summary judgment.

**MOTION FOR SUMMARY JUDGMENT**

Summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Here, the parties dispute numerous material issues of fact regarding Boutros's termination and work environment—specifically, whether Avis subjected Boutros to a hostile workplace on the basis of his race and whether Avis terminated Boutros either in retaliation for exercising his USERRA rights or because of his race. Because a jury could, on the basis of this summary judgment record, reasonably resolve these fact disputes in Boutros's favor, summary judgment in Avis's favor is not warranted and Avis's motion is denied.

**I.     Retaliation in Violation of USERRA**

USERRA prohibits employers from "discriminat[ing] in employment against or tak[ing] any adverse employment action against any person because such person . . . has taken an action to enforce a protection afforded" by USERRA. 38 U.S.C. § 4311(b). Here, Boutros alleges that Avis suspended him without pay, and ultimately terminated his employment—both of which qualify as materially adverse employment actions, *Crews v. City of Mt. Vernon*, 567 F.3d 860, 869 (7th Cir. 2009)—because he had previously sued to require Avis to reinstate his employment pursuant to USERRA. Avis disagrees, arguing that it suspended and terminated Boutros because of his lies and misstatements regarding the fire extinguisher incident. The parties dispute issues of fact that cannot be resolved at this time, and therefore Avis's motion is denied.

Under USERRA, Boutros bears the initial burden of showing by a preponderance of the evidence that his enforcement of his USERRA rights "was a motivating factor in his discharge from employment." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 754 (6th Cir. 2012); *see*

*also* 38 U.S.C. § 4311(c)(2). If Boutros carries that burden, then "the burden shifts to [Avis] to prove affirmatively that it would have taken the same employment action in the absence of" Boutros's action to enforce the reinstatement of his employment. *Bobo*, 665 F.3d at 754; 38 U.S.C. §4311(c)(2).

Boutros has presented sufficient evidence to allow a rational jury to determine by a preponderance of the evidence that his previous USERRA lawsuit against Avis was a "motivating factor" in his discharge. First, he presented evidence showing that managers at Avis were continuously looking for a way to terminate him beginning almost immediately after he returned to the company. Within a month of Boutros's return, Rogers asked whether Avis could terminate Boutros for discussing the settlement of his USERRA claim. PX 16. Later, after Boutros reported that Trujillo "hugged" him, Liss emailed other Avis managers to say that Boutros's report was "unbelievable" and to remind them that Boutros had previously sued Avis for violating USERRA. PX 25. Rogers responded that Boutros needed to be "held accountable once and for all." *Id.* Shortly thereafter, Rogers asked whether Avis could "rid ourselves of [Boutros] once and for all" in response to the fire extinguisher incident. PX 49. This evidence, in aggregate, could suggest that Avis looked for—and eventually seized upon—a pretext that it could use to terminate Boutros in retaliation for his initial USERRA lawsuit.

Second, Boutros presented a laundry list of inconveniences that he was forced to endure after returning to Avis. These included Avis stripping him of his seniority and assigning him to less desirable shifts, failing to withhold his union dues, delaying his health insurance, failing to provide his paychecks on time, and failing to give him a working identification card. Though these actions do not necessarily prove that Avis intended to retaliate against Boutros for exercising his USERRA rights, they are circumstantial evidence that Avis did not treat Boutros

9

like a normal employee after his USERRA lawsuit, and they provide an additional basis for a rational jury to determine that Avis was penalizing Boutros for filing his USERRA lawsuit; from there, it is not a long jump to infer that the lawsuit may have been a motivating factor in his termination.

Though Boutros met his initial burden to show that USERRA retaliation was a motivating factor in his termination, Avis "has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that [it] would have taken the adverse action anyway, for a valid reason." *Goico v. Boeing Co.*, 347 F. Supp. 2d 955, 983 (D. Kan. 2004). Avis has presented evidence that, with respect to the fire extinguisher incident, Boutros failed to follow managerial orders, lied about what had happened, and feigned injury though he was uninjured. By contrast, Boutros has presented evidence that he followed managerial directives, that he told the truth about what had happened, and that he was legitimately injured. These are clearly are disputed issues of material fact inappropriate for resolution by summary judgment. Therefore, Avis's motion for summary judgment fails with respect to Boutros's USERRA retaliation claim.

## II.  Title VII Discrimination

Boutros also alleges that Avis suspended and eventually terminated him because of his race.[2] He seeks to prove discrimination via the direct method. "Under the direct method, a plaintiff must 'present either direct evidence of discriminatory intent (such as an admission) or

---

[2] Boutros's first amended complaint alleges that Avis discriminated against him on the basis of his "race," and so the Court uses that term here, though it may be that Boutros's "actual race" and "perceived race"—Assyrian and Arab, respectively—are more accurately described as "ethnicities" instead of "races." For purposes of evaluating Boutros' Title VII claim, the distinction is not material, as the statute has been broadly interpreted to prohibit discrimination based on either race or ethnicity. *See, e.g., Daniels v. Essex Grp., Inc.*, 937 F.2d 1264, 1270 (7th Cir. 1991) (recognizing that "claims are cognizable under Title VII for discrimination on the basis of race, ethnicity, and gender").

enough circumstantial evidence to allow a rational jury to infer that discriminatory intent motivated his firing.'" *Martino v. Western & Southern Fin. Grp.*, 715 F.3d 195, 201 (7th Cir. 2013) (quoting *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011)).

As direct evidence that Avis's racial discrimination played a role in his termination, Boutros claims that Rogers told him that "Arab[s] are all fraudulent, and you are also fraudulent, we don't believe you, we don't trust you." Boutros Dep. at 322-23.[3] Avis vehemently denies that Rogers ever made such a statement, but "at summary judgment, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006) (internal quotation marks omitted). Therefore, the Court must assume that Boutros's deposition testimony is true and that Rogers did make the statement.

Avis characterizes Rogers's statement as merely a "stray remark." Even if that is correct, stray remarks can establish discriminatory motivation "where the remark was (1) made by the decisionmaker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Egonmwan v. Cook County Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010). Here, the "stray" remark satisfies all three criteria. There is evidence that Rogers—Avis's City Manager for Chicago—was the Avis employee who decided to terminate Boutros. Rogers Dep. (Dkt. 79-1 p. 11) at 108. Rogers made his statement on June 28, 2008, at his final meeting with Boutros, after which Rogers decided to terminate his employment. MSJ (Dkt. 78) at 9, n. 2. And the topic of that meeting was Boutros's suspension and termination. Therefore, even if it

---

[3] The Seventh Circuit has "long held that a plaintiff may defeat summary judgment with his or her own deposition." *Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006).

was a "stray remark," Rogers's statement (if he actually made it) is sufficient evidence of Avis's discriminatory intent.

Avis argues that it could not have discriminated against Boutros because of his race because "no one at Avis knew [his] race," and even if Rogers told Boutros that Arabs are fraudulent, Boutros "admits that he is not Arab." Avis Reply (Dkt. 91) at 5. This argument is as offensive as it is incorrect. Avis cannot seriously contend that it was free to discriminate against Boutros on the basis of his perceived race—Arab—because it was unaware that he was actually ethnically Assyrian. Courts throughout the nation have considered and rejected this argument. *See E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 401 (5th Cir. 2007) (sufficient evidence of discrimination where plaintiff from India was harassed because he was perceived to be Arab); *Estate of Amos v. City of Page*, 257 F.3d 1086, 1094 (9th Cir. 2001) ("That Amos was actually white [rather than Native American] does not make th[e] discrimination or its resulting injury less direct."); *Zayadeen v. Abbott Molecular, Inc.*, No. 10 C 4621, 2013 WL 361726, *8 (N.D. Ill. Jan. 30, 2013) (rejecting argument that plaintiff could not have suffered national origin harassment by comparison to Borat where the plaintiff is from Jordan and Borat is from Kazakhstan); *Langadinos v. Appalachian Sch. of Law*, No. 05 C 39, 2005 WL 2333460, *1 n. 6 (W.D. Va. Sep. 25, 2005) ("The plaintiff may still establish a cause of action under the Civil Rights Act despite the defendant's mistaken belief that his ethnic characteristics are those of a person of Italian, rather than Greek, descent."); *LaRocca v. Precision Motorcars, Inc.*, 45 F. Supp. 2d 762, 770 (D. Neb. 1999) ("The fact that [a co-worker] ignorantly used the wrong derogatory ethnic remark toward the plaintiff is inconsequential."). Though Boutros is Assyrian, Avis will be liable for wrongful termination if Boutros can establish that Avis terminated him

because it perceived him to be Arab. Because there is a disputed issue of fact as to whether Boutros can make that showing, Avis's motion for summary judgment is denied as to Count II.

## III. Title VII Hostile Work Environment

Finally, Avis moves for summary judgment on Boutros's claim that it violated Title VII by subjecting him to a hostile work environment on the basis of his race. To survive summary judgment on a hostile work environment claim, Boutros must meet three requirements. First, he must produce evidence that the alleged harassment was "severe or pervasive." *Hall v. City of Chicago*, 713 F.3d 325, 330 (7th Cir. 2013). "This requirement is disjunctive—'one extremely serious act of harassment could rise to an actionable level as could a series of less severe acts.'" *Id.* (quoting *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001)). Second, Boutros must show that the hostile conditions existed because of his race. *Id.* Third, there must be a basis for employer liability. *Id.*

Boutros submits evidence that easily satisfies each requirement. He testified at his deposition that because Trujillo believed he was Arab, he consistently forbade him from taking lunch or smoking breaks near the customer service building, and instead required him to eat and smoke with the Muslim employees near the administrative building.[4] That is pervasive harassment on the basis of Boutros's (perceived) race or religion. Therefore, Boutros has established the first two requirements. And Boutros also establishes the third element, that there is a basis to hold Avis liable. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S.

---

[4] Boutros also presents evidence of other potential racial harassment by Trujillo, including his questions whether Boutros's family was responsible for the September 11 attacks and the "hugging" incident.

13

775, 807 (1998); *see also Hall*, 713 F.3d at 335. Trujillo was Boutros's immediate supervisor, Boutros Dep. at 419-20, and therefore, because Trujillo created the hostile environment, there is a basis to hold Avis liable.

Disputed questions of material fact remain as to whether Trujillo (and by extension, Avis) actually committed the discriminatory acts that Boutros alleges. But if Boutros proves the facts he has alleged, a reasonable jury could find that Avis violated Title VII by creating a hostile work environment. *Haugerud*, 259 F.3d at 693. Therefore, summary judgment is improper, and Avis's motion is denied as to Count III.

\* \* \*

For the reasons set forth above, Avis's motion to strike is granted in part and denied in part. Avis's motion for summary judgment is denied in its entirety.

Entered: July 24, 2013

John J. Tharp, Jr.
United States District Judge